[No. E011954. Fourth Dist., Div. Two. Oct. 3, 1994.]

AMYLOU R., Plaintiff and Respondent, v.
COUNTY OF RIVERSIDE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B.

COUNSEL

Fidler, Bell, Orrock & Watase, Leslie E. Murad II, Greines, Martin, Stein & Richland, Martin Stein, Timothy T. Coates and Alison M. Turner for Defendant and Appellant.

Robert W. Thompson for Plaintiff and Respondent.

OPINION

McKINSTER, J.—The County of Riverside (County) appeals from a judgment against it in an action brought by a rape victim, Amylou R. We modify the judgment to eliminate any recovery for tortious acts for which the County is statutorily immune, and affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 24, 1986, Amylou, then aged 15, and her friend, Diane Harper, were walking from La Sierra High School toward a 7-Eleven store. Joseph Hart, a stranger to Amylou, drove up beside them and offered to pay them $1,000 if they would act as lookouts while he harvested marijuana. Hart

drove the girls to a remote area, raped and murdered Harper, and sodomized and raped Amylou and forced her to orally copulate him. Amylou convinced Hart to release her. He allowed her to put her blouse and skirt back on and drove her to a convenience store, where he gave her a quarter for the phone before leaving.

During the investigation of the crimes, an antagonistic relationship developed between Amylou and the investigating officers, Deputy Shannon and Detectives Lackie and Moker. The fact that Amylou had not been killed along with her friend, conflicting accounts as to which of the girls had been the first to approach Hart's car, and certain inconsistencies in Amylou's account led the officers to speculate—first to Amylou and then to her friends and neighbors—that she knew more than she was telling them. In response, she refused to speak to those officers any further.

Contending that the actions of the officers were tortious, Amylou sued the County on theories of negligence, assault, false imprisonment, slander, and intentional and negligent infliction of emotional distress. Three of those claims—for false imprisonment and the intentional and negligent infliction of emotional distress—were tried to a jury. In general verdicts, the jury awarded Amylou $25,000 for false imprisonment, and $300,000 for the infliction of emotional distress.

## CONTENTIONS

The County makes a variety of arguments concerning the judgment on the emotional distress claims. We find it necessary to consider only one: whether the County is statutorily immune from liability for the investigating officers' allegedly tortious acts.

As to the false imprisonment count, the County contends only that the judgment is not supported by substantial evidence.

## DISCUSSION

A.   *The County Is Statutorily Immune From Liability on the Claims for Infliction of Emotional Distress.*

"Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (Gov. Code,

§ 815.2, subd. (b).[1]) "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (§ 821.6.)

In its answer to the complaint, in an unsuccessful motion for summary judgment, and in a motion *in limine*, the County argued that it was statutorily immune from liability for the injuries complained of by Amylou pursuant to, inter alia, sections 815.2 and 821.6. Accordingly, the County requested that the jury be instructed in the language of sections 815.2 and 821.6, but the trial court refused to do so.

Pursuant to sections 815.2 and 821.6, the County is immune from liability for the actions or omissions of the investigating officers if: (1) the officers were employees of the County; (2) Amylou's injuries were caused by acts committed by the officers to institute or prosecute a judicial or administrative proceeding; and (3) the conduct of the officers while instituting or prosecuting the proceeding was within the scope of their employment.

There is no dispute that the alleged tortfeasors—Officer Shannon and Detectives Moker and Lackie—are public employees of the County. Both detectives testified to that fact without contradiction, and Amylou conceded that Shannon was so employed. Indeed, Amylou must concede this element, because if the officers were not employed by the County, the County would not be vicariously liable for their actions and omissions.

Similarly, Amylou must concede (as she seems to do in her complaint) that the officers' actions and omissions of which she complains were within the scope of their employment. "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity *within the scope of his employment* if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (§ 815.2, subd. (a), italics added.) Thus, "[t]o establish liability of a public entity for the acts of its employee, the employee must have been acting within the 'scope of employment.'" (Cal. Government Tort Liability Practice (Cont.Ed.Bar 3d ed. 1992) General Liability & Immunity Principles, § 2.60, p. 132.)

Third, there appears to be little doubt that the actions complained of were committed in the course of the institution and prosecution of a judicial proceeding. ▮ Section 821.6 is not limited to the act of filing a criminal complaint. Instead, it also extends to actions taken in preparation for formal

---

[1]Unless specified otherwise, all section references are to the Government Code.

proceedings. Because investigation is "an essential step" toward the institution of formal proceedings, it "is also cloaked with immunity." (*Kemmerer* v. *County of Fresno* (1988) 200 Cal.App.3d 1426, 1436-1437 [246 Cal.Rptr. 609]; see, e.g., *Johnson* v. *City of Pacifica* (1970) 4 Cal.App.3d 82 [84 Cal.Rptr. 246] [police officers immune for their negligent investigation of a crime]; *Stearns* v. *County of Los Angeles* (1969) 275 Cal.App.2d 134, 136-137 [79 Cal.Rptr. 757] [negligent performance of autopsy]; *Jenkins* v. *County of Orange* (1989) 212 Cal.App.3d 278, 283-284 [260 Cal.Rptr. 645] [negligent investigation by social worker of reports of child abuse].)

Here, the conduct of which Amylou complains was committed by the officers in the course of investigating the crimes perpetrated upon Harper and Amylou by Hart. For instance, she testified that when the officers were driving her around in search of Diane Harper on the night of March 24, and after they had found the trail at the end of which the crimes had been committed, she told them that she was afraid to go any further down the trail herself, and instead gave them directions as to where Harper's body could be found. Deputy Shannon responded, " 'Your friend died for you. [T]he least you could do is show us where her body [is].' "

The next day, the two detectives went to Amylou's house to interview her again, arriving while she was trying to sleep. They entered the house uninvited and argued with Amylou's mother about whether their need to interview Amylou in order to investigate the crime was greater than her need to rest. Thereafter, Detective Moker called Vikki Cochran of the Riverside Rape Crisis Center to meet with Amylou and her mother and explain the importance of assisting with the investigation.

A subsequent interview was conducted on April 2 in an attempt to clarify certain gaps and contradictions in Amylou's prior accounts. On that occasion, Detective Lackie told her that he "knew" that she was lying, that he wanted the truth, the whole story, and that if she refused he would tell everyone she knew that she was lying, with the result that she would have no friends.

Thereafter, Amylou refused to have any contact with the officers. A week later, the detectives began questioning Amylou's friends and neighbors to determine what Amylou or her family may have told them about the crimes. The detectives told neighbors that Amylou was lying, that she was not cooperating with the investigation, and that " 'there was more to [her] involvement than meets the eye.' " In a conversation concerning an effort by Diane Harper's parents to try to lure the murderer, Detective Lackey told the mother of another girl at Amylou's school that Amylou knew the man who

committed the crimes, that she was not the victim she presented herself to be, and that she was involved in the crimes.

Since the acts of which Amylou complains are incidental to the investigation of the crimes, and since investigation is part of the prosecution of a judicial proceeding, those acts were committed in the course of the prosecution of that proceeding. Thus, each of the three elements of the immunity provided by section 821.6 is present.

The only question remaining is whether that immunity is limited to claims for injuries suffered by the target of the judicial or administrative proceeding, or whether it also shields the officers from liability for injuries suffered by others, such as witnesses or victims. While we find no authority directly addressing the issue, for the reasons set forth below we conclude that the immunity provided by section 821.6 bars liability for any injury caused by the prosecution of the judicial proceeding, even if the person suffering the injury is not the target of that prosecution.[2]

Turning first to the language of the statute, section 821.6 defines the claims as to which a pubic employee is immune according to how they were caused, not according to the identity of the person bringing the claim. In particular, nothing in its language suggests that the immunity is limited to claims made by a target of the former proceeding.

■■ Because one of the elements of the tort of malicious prosecution is that the prior proceeding terminated in favor of the present plaintiff (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 421, p. 505), a person pursuing a malicious prosecution claim must have been a target of that proceeding. However, the language of section 821.6 does not limit its application solely to the tort of malicious prosecution. To the contrary, by specifying that the employee is immune "even if he acts maliciously," the section clearly extends to proceedings which were not initiated out of a malicious intent, and thus would not constitute malicious prosecution. (*Johnson* v. *City of Pacifica, supra,* 4 Cal.App.3d at pp. 86-87.) Accordingly, the notion that the immunity provided by section 821.6 is limited to claims for malicious prosecution has been repeatedly rejected. (See, e.g., *Jenkins* v. *County of Orange, supra,* 212 Cal.App.3d at p. 283.)

Moreover, while most of the cases applying section 821.6 have been brought by targets of the former proceedings, the courts have also applied

---

[2]We note, however, that while an arrest could be considered to be part of the investigation leading up to a judicial proceeding, it is settled that section 821.6 does not provide immunity for claims for false imprisonment. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 719-722 [117 Cal.Rptr. 241, 527 P.2d 865].)

the immunity statute to bar claims made by other parties. For instance, in *Jenkins* v. *County of Orange, supra,* the underlying proceeding was a dependency action in which the minor's maternal grandfather was suspected of abusing the minor. (212 Cal.App.3d at p. 281.) After the dependency petition was dismissed, not only the grandfather, but also the minor, his mother, and the maternal grandmother sued the county for damages for, inter alia, the social worker's negligence. (*Id.,* at pp. 281-282.) Without drawing any distinction between those plaintiffs (such as the grandfather) who had been targets of the investigation and those plaintiffs (such as the minor) who clearly were not, the court held that the negligence claims of all of the plaintiffs were barred by section 821.6. (*Id.,* at pp. 283-284; see also *Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 883 [271 Cal.Rptr. 513] [holding under similar facts that the claims of the minor and the minor's parents are barred by § 821.6].) The same section has been invoked to bar a minor's claim that a county had negligently administered the minor's adoption by placing him with abusive adoptive parents. (*Ronald S.* v. *County of San Diego* (1993) 16 Cal.App.4th 887, 899 [20 Cal.Rptr.2d 418].)

Similarly, in *Jager* v. *County of Alameda* (1992) 8 Cal.App.4th 294 [10 Cal.Rptr.2d 293], the underlying proceeding was an effort by the family support division of the county's district attorney's office to enforce a child support order against the father. When the family support division released the judgment after collecting only $23,000 of the $35,000 allegedly due, the mother filed suit against the county (*id.,* p. 296), alleging intentional or negligent interference with her economic relationship (*id.,* at p. 298). Even though the mother was not the target of the earlier proceeding, the court held that the county was immunized by section 821.6. (*id.,* at p. 298.)

While *Jenkins, Alicia T., Ronald S.,* and *Jager* all suggest that in applying the immunity provided by section 821.6, no distinction may properly be drawn between claims for injuries suffered by the targets of the underlying proceedings and those suffered by persons who were not, none of them actually addresses the issue. Nor does the issue appear to be discussed in the legislative history of section 821.6.[3]

In the absence of any direct authority governing the scope of section 821.6, we turn to the public policy supporting the immunity. The criminal

---

[3]Section 821.6 was enacted by the Legislature (Stats. 1963, ch. 1681, § 1, p. 3270) in the exact language proposed by the California Law Revision Commission (Recommendations Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 845). The possible distinction between the targets of the prior proceedings and other claimants was not raised, either in the commission's recommendations or in the underlying research study conducted by Professor Van Alstyne. (Study Relating to Sovereign Immunity (Jan. 93) 5 Cal. Law Revision Com. Rep. (1963) pp. 411-415.)

law does not enforce itself; instead, our system of law enforcement depends upon "the investigation of crime and the accusation of offenders by properly trained officers." (*White* v. *Towers* (1951) 37 Cal.2d 727, 729-730 [235 P.2d 209, 28 A.L.R.2d 636]; *Scannell* v. *County of Riverside* (1984) 152 Cal.App.3d 596, 604 [199 Cal.Rptr. 644].) The impartiality of that system requires that, when exercising that responsibility, the officers are " 'free to act in the exercise of honest judgment uninfluenced by fear of consequences personal to themselves.' " (*White*, p. 732, quoting from *Pearson* v. *Reed* (1935) 6 Cal.App.2d 277, 288 [44 P.2d 592].) To eliminate that fear of litigation and to prevent the officers from being harassed in the performance of their duties, law enforcement officers are granted immunity from civil liability, even for the malicious abuse of their power. (*White*, p. 730.) " '[I]n the end [it is] better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' " (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 583 [311 P.2d 494, 66 A.L.R.2d 739], quoting from *Gregoire* v. *Biddle* (2d Cir. 1949) 177 F.2d 579, 581; accord, *Imbler* v. *Pachtman* (1976) 424 U.S. 409, 428 [47 L.Ed.2d 128, 142, 96 S.Ct. 984].)

That public policy of trying to prevent an officer's decisions from being tainted by his or her concern over the possibility of subsequent claims for damages does not apply solely to claims made by the target of the prior proceeding. Claims made by persons who were injured by the officer's decisions but who were not the actual target of the investigation or prosecution have the same potential to inhibit the officer from following his or her professional judgment and thus to interfere with the evenhanded enforcement of the law.

More generally, the rule in this state is that, unless otherwise provided by statute, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a).) Accordingly, governmental immunity is the rule, and liability is the exception. (*Thompson* v. *City of Lake Elsinore* (1993) 18 Cal.App.4th 49, 63 [22 Cal.Rptr.2d 344].)

Given that general rule, the specific public policy in favor of immunity for law enforcement officers, and the absence of any suggestion in either the language of the statute, its legislative history, or the cases applying it that it

The only source of legislative controversy regarding section 821.6 appears to have been the commission's recommendation that while public employees should be immune from liability for their prosecutorial acts, public entities should be held liable if their employees acted out of malice. (See discussion at 4 Cal. Law Revision Com. Rep., *supra*, p. 817, and proposed § 816, *id.*, p. 841.) The Legislature rejected that proposal.

provides immunity solely with respect to claims made by the targets of the underlying proceeding, we hold that section 821.6 bars claims made by anyone who has been injured as a result of the institution or prosecution of the prior judicial or administrative proceeding, whether or not the claimant was the target of that proceeding.

Accordingly, section 821.6 immunizes both the investigating officers and, by operation of section 815.2, subdivision (b), the County from the damage claims asserted by Amylou.

B.  *The Judgment on the False Imprisonment Claim Is Supported by Substantial Evidence.**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

Substantial evidence supports the judgment on the false imprisonment claim. However, the jury's $300,000 verdict on the emotional distress counts is barred by section 821.6. Accordingly, in order to eliminate the damages awarded for claims for which the County is statutorily immune, the judgment is modified by reducing the total award from $325,000 to $25,000. As modified, the judgment is affirmed. Both sides shall bear their own costs on appeal.

Ramirez, P. J., and Dabney J., concurred.

Appellant's petition for review by the Supreme Court was denied December 22, 1994.

---

*See footnote, *ante*, page 1205.