# IN THE SUPREME COURT OF CALIFORNIA

DORA LEON,
Plaintiff and Appellant,

v.

COUNTY OF RIVERSIDE,
Defendant and Respondent.

S269672

Fourth Appellate District, Division Two
E073781

Riverside County Superior Court
RIC1722990

June 22, 2023

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Jenkins, and Evans concurred.

LEON v. COUNTY OF RIVERSIDE

S269672

Opinion of the Court by Kruger, J.

A provision of the Government Claims Act immunizes public employees from liability for "instituting or prosecuting any judicial or administrative proceeding" within the scope of their employment, "even if" the employees act "maliciously and without probable cause." (Gov. Code, § 821.6 (section 821.6).) This provision immunizes public employees from claims of injury caused by wrongful prosecution. The question before us is whether, as several Courts of Appeal have held, it also confers immunity from claims based on other injuries inflicted in the course of law enforcement investigations. The answer is no. While other provisions of the Government Claims Act may confer immunity for certain investigatory actions, section 821.6 does not broadly immunize police officers or other public employees for any and all harmful actions they may take in the course of investigating crime.

**I.**

Plaintiff Dora Leon's husband, José Leon, was shot and killed in the driveway of a mobile home lot near his home.[1] When Riverside County Sheriff's deputies arrived on the scene, they heard additional shots. They dragged José behind a vehicle, where they unsuccessfully attempted to revive him. The

---

[1] For clarity, we refer to Dora and José Leon by their first names.

1

movement had caused José's pants to slide down to his ankles, exposing his naked body. His body remained in that uncovered state for approximately eight hours while officers searched for the shooter and investigated the shooting. The officers ultimately determined that the shooter had killed himself shortly after killing José. No charges were filed.

Dora sued, asserting a single cause of action for negligent infliction of emotional distress. The complaint alleged that the deputies and the public entity that employed them failed to exercise reasonable care when they left José's body exposed and uncovered for hours, in view of both Dora and the general public.

The County of Riverside (County) moved for summary judgment. Under the Government Claims Act (sometimes the Act), a public entity like the County is ordinarily immune from liability when its employees are immune. (Gov. Code, § 815.2, subd. (b); see *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980.) As relevant here, the County argued that its employees were immune under section 821.6 for "all conduct related to the investigation and filing of charges." Because the suit arose from steps taken while investigating José's homicide, the County argued, both the employees and their employer were immune from liability. (See Gov. Code, §§ 815.2, 821.6.) The trial court agreed and entered judgment for the County.

The Court of Appeal affirmed. (*Leon v. County of Riverside* (2021) 64 Cal.App.5th 837 (*Leon*).) As it explained, a line of appellate cases "ha[s] consistently construed section 821.6 as immunizing a public employee from liability for any injury-causing act or omission in the course of the institution and prosecution of any judicial or administrative proceeding, *including an investigation that may precede the institution of*

*any such proceeding.*" (*Id.* at p. 846, italics added.) Because "the deputies' negligence, if any, in failing to promptly cover or remove José's body from the scene, occurred during the course of the deputies' performance of their official duties [and their] investigation of the shooting," the deputies, and thus the County, were immune. (*Id.* at p. 848.)

Justice Raphael joined the majority opinion but wrote separately to observe that this court, addressing other fact patterns, had construed section 821.6 more narrowly to "provide[] absolute immunity only against malicious prosecution claims." (*Leon, supra*, 64 Cal.App.5th at p. 860 (conc. opn. of Raphael, J.), citing *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710.) "Working on a blank slate," Justice Raphael would have adopted the narrower interpretation. (*Leon*, at p. 863 (conc. opn. of Raphael, J.).) But he concluded, "[A]ny correction to the Court of Appeal's decades-old, expansive application of section 821.6 will have to come from our Supreme Court, rather than from us." (*Id.* at p. 864 (conc. opn. of Raphael, J.).)

We granted review.

## II.

## A.

For many years before the Government Claims Act was enacted in 1963, California courts had applied a common law doctrine of governmental immunity that generally barred tort suits against public entities. (*Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, 214–215.) Over time, however, this common law immunity became "riddled with exceptions" that "operate[d] so illogically as to cause serious inequality." (*Id.* at p. 216.) As scholarly criticism mounted, other jurisdictions

judicially abolished governmental tort immunity. (*Ibid.*, citing, e.g., *Molitor v. Kaneland Community Unit District No. 302* (1959) 18 Ill.2d 11, 14–25 [163 N.E.2d 89, 90–96]; *Colorado Racing Com'n v. Brush Racing Ass'n* (1957) 136 Colo. 279, 284–285 [316 P.2d 582, 585–586]; *Hargrove v. Town of Cocoa Beach* (Fla. 1957) 96 So.2d 130, 132–134.) In 1961, this court joined those jurisdictions and abrogated the common law rule of governmental tort immunity. (*Muskopf*, at p. 216.)

Presented with the abrupt discontinuation of governmental immunity from tort suits, the Legislature temporarily restored the status quo ante pending further study. (Civ. Code, former § 22.3, enacted by Stats 1961, ch. 1404, § 1, pp. 3209–3210; see *Corning Hospital Dist. v. Superior Court* (1962) 57 Cal.2d 488, 492–495.) The California Law Revision Commission (sometimes Commission) completed a comprehensive review of governmental immunity and submitted to the Legislature a series of proposed statutes governing the tort liability of public entities and employees. (Recommendation Relating to Sovereign Immunity, Number 1 – Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 801 (Recommendation).) In 1963, the Legislature enacted the Commission's proposed scheme, with minor modifications, as the California Tort Claims Act (Stats. 1963, ch. 1681, § 1, pp. 3266–3284), which has since been retitled the Government Claims Act (see *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803, fn. 1 (*Quigley*)).

The Government Claims Act abolished common law tort liability and immunity for public entities, replacing it with "a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts."

(*Quigley*, *supra*, 7 Cal.5th at p. 803; see Gov. Code, § 815.) As a general rule, the Act makes public entities liable for injuries proximately caused by their employees in the course of employment but immunizes the public entity from liability when the employee is immune. (Gov. Code, § 815.2, subds. (a), (b).) The Act contains numerous provisions conferring immunity on employees, including for acts or omissions resulting from an exercise of discretion vested with the employee (*id.*, § 820.2); for the execution of enactments when carried out with due care (*id.*, § 820.4); and for the failure to adopt or enforce an enactment (*id.*, § 821). The immunity provision at issue in this case, section 821.6, provides in full: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

## B.

This is not our first encounter with section 821.6. In *Sullivan v. County of Los Angeles*, *supra*, 12 Cal.3d 710 (*Sullivan*), this court considered whether section 821.6 immunized a county and its officials from a false imprisonment suit for failing to discharge an inmate once his lawful term expired. Based on examination of the text and legislative history, we concluded section 821.6 afforded no such immunity. "[T]he Legislature," we explained, "intended the section to protect public employees from liability only for *malicious prosecution* and not for *false imprisonment*." (*Sullivan*, at p. 719.)

We reiterated and expanded on this conclusion in *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, which involved a

claim against police officers and their employer for false arrest and imprisonment before a trial at which Asgari was ultimately acquitted. As in *Sullivan*, the defendants invoked section 821.6. We explained in *Asgari* that police officers are not, by virtue of their job title alone, outside the scope of section 821.6. Because section 821.6 "focus[es] upon the nature of the alleged tort, rather than the nature of the governmental duties performed by the defendant" (*Asgari*, at p. 756), the immunity it confers can extend beyond " 'prosecuting attorneys and other similar individuals' . . . 'to police officers as well' " (*id.* at pp. 756–757, citation omitted). But immunity under section 821.6 " 'is dependent on how the injury is caused.' " (*Asgari,* at p. 757.) We went on to explain that "[u]nder California law, a police officer may be held liable for false arrest and false imprisonment, but not for malicious prosecution." (*Ibid.*) These are " 'mutually inconsistent concepts, the former relating to conduct that is without valid legal authority and the latter to conduct where there is valid process or due authority.' " (*Ibid.*) We thus concluded that the defendants in the case were not immune from liability for false arrest and imprisonment that occurred before the plaintiff's arraignment. Once he was arraigned, however, his continued incarceration was a result of the institution of judicial proceedings against him, and the officers were immune under section 821.6 for any role they played in bringing about that result. (*Asgari*, at p. 758.)

While *Sullivan* and *Asgari* both described section 821.6 as conferring immunity against what they termed "malicious prosecution" claims, the Courts of Appeal to address section 821.6 have ventured in different directions. Some appellate decisions have hewed to the same course as *Sullivan* and *Asgari*, granting immunity to officers and their employers for their role

in initiating prosecutions. (See, e.g., *Collins v. City and County of San Francisco* (1975) 50 Cal.App.3d 671, 676–678; *Johnson v. City of Pacifica* (1970) 4 Cal.App.3d 82, 85–87; see *Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 463 [§ 821.6 "is intended to prevent malicious prosecution actions against government officials"]; *Sharp v. County of Orange* (9th Cir. 2017) 871 F.3d 901, 920–921 [following *Sullivan*: § 821.6 protection limited to malicious prosecution claims].) But many Courts of Appeal have charted a different path, extending section 821.6 to claims for injuries caused by official conduct other than the initiation or prosecution of a proceeding. (See, e.g., *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1211–1214 (*Amylou R.*) [police officers investigating a rape immune for inflicting emotional distress on victim through comments they made to and about her]; *Citizens Capital Corp. v. Spohn* (1982) 133 Cal.App.3d 887, 888 [officials immune for publicizing allegations of improper conduct].) These courts either understood *Sullivan* as limited to its facts (e.g., *Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278, 283 [reading *Sullivan* as limited to false imprisonment claims]) or ignored it altogether (e.g., *Citizens Capital Corp., supra,* 133 Cal.App.3d 887).

As particularly relevant here, the 1994 decision in *Amylou R.* concluded that section 821.6 applied to the tort claims of plaintiffs allegedly harmed by police misconduct or negligence in the course of investigating crimes, even where the plaintiffs' injuries did not result from the initiation or prosecution of an official proceeding. Since then, a number of appellate courts have followed *Amylou R.*'s lead in applying section 821.6 immunity against claims of harm stemming from police investigations. (See, e.g., *Baughman v. State of California*

(1995) 38 Cal.App.4th 182, 191–193 [police immune for destruction of data storage discs in the course of executing a search warrant]; *Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1443–1445, 1461 [California Highway Patrol officer immune from liability for negligently losing or destroying identification information during investigation of accident].)

In this case, the Court of Appeal relied on *Amylou R.* and similar decisions to conclude that section 821.6 immunity for, in the statutory language, "instituting or prosecuting any judicial or administrative proceeding," applies to a claim for negligent infliction of emotional distress resulting from the conduct of a police investigation. The court so held even though the claim was brought by a plaintiff who claimed no harm resulting from the institution or prosecution of judicial or administrative proceedings — and who could not conceivably have claimed such harm, because no proceedings were ever instituted. (*Leon*, *supra*, 64 Cal.App.5th at pp. 846–848.)

We conclude this was error. The Court of Appeal's conclusion is inconsistent with section 821.6's text and history, as well as our precedent construing the same.

## III.

### A.

To understand the intended scope of section 821.6, we begin with the text. (*Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104, 114.) Section 821.6 immunizes public employees from liability "for injury caused by . . . instituting or prosecuting any judicial or administrative proceeding," provided those actions occur "within the scope of . . . employment," and "even if" those actions are taken "maliciously and without probable cause." We described the dictionary meaning of the

relevant terms in *Sullivan*: "According to Webster's Third New International Dictionary (1961) 'institute' means 'to originate and get established . . . [to] initiate,' and 'prosecute' means 'to institute legal proceedings against; *esp*: to accuse of some crime or breach of law or to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal.' " (*Sullivan*, *supra*, 12 Cal.3d at p. 719.) Other contemporaneous sources further explain that "[t]o 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion." (Black's Law Dict. (4th ed. 1951) p. 1385, col. 1; see 12 Oxford English Dict. (2d ed. 1989) p. 662 [tracing historical definition].) We explained in *Sullivan* that, "viewed literally," this language "does not reach the act of holding a person in jail beyond his term," which was the act challenged in that case. (*Sullivan*, at p. 719.) The language likewise does not reach the investigatory acts challenged in this case, none of which constitute the initiation or continued prosecution of official proceedings.

What we had described in *Sullivan* as the "literal," dictionary-derived meaning of the language of section 821.6 echoes the common law usage of the same operative terms to describe the tort of malicious prosecution — a tort generally defined as "improperly instituting or maintaining" a legal action. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169; see *Sullivan*, *supra*, 12 Cal.3d at p. 720 ["Malicious prosecution 'consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause' " (italics omitted)].) We generally presume that when the Legislature uses common law terms in its enactments, it intends to incorporate their settled common law meanings. (E.g., *People*

*v. Lopez* (2003) 31 Cal.4th 1051, 1060; *People v. Tufunga* (1999) 21 Cal.4th 935, 946.) This presumption is particularly appropriate here, in a case concerning the meaning of the Government Claims Act — a statute consciously enacted against the backdrop of the common law for the purpose of governing common law tort claims against public entities and employees. (See Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at pp. 807–813.)

Consideration of common law meaning reinforces our conclusion that section 821.6 immunity does not reach the officer's conduct in this case. Under the common law governing the malicious prosecution tort, the conduct of an investigation, without more, is not an actionable institution or prosecution of a legal action. (E.g., *Van Audenhove v. Perry* (2017) 11 Cal.App.5th 915, 924 ["Before charges are filed, the actions of the police and the prosecutor are merely investigatory," and no malicious prosecution claim will lie]; *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 736–737; *Imig v. Ferrar* (1977) 70 Cal.App.3d 48, 58–60.) While a claim of malicious prosecution may lie against a defendant other than the public prosecutor who filed the relevant charges, the claim still must be based on the defendant's role in bringing the proceedings about. (*Sullivan, supra*, 12 Cal.3d at p. 720 [" 'The test is whether the defendant was actively instrumental in causing the prosecution' "].)[2] We presume that when the Legislature crafted an immunity provision using language largely tracking the

---

[2]    Because Dora does not allege her injuries arose from any official proceeding, this case provides no occasion for further delineating the causal connection between a defendant's conduct and the initiation of a proceeding that *Sullivan* identified as necessary for a malicious prosecution action.

definition of the common law tort of malicious prosecution, it intended for courts to respect the traditional distinction between mere investigation and the prosecution of a legal action.

The language of section 821.6 does deviate from the malicious prosecution tort in one regard. The malicious prosecution tort requires proof that the defendant acted with malice and without probable cause. (*Sullivan*, *supra*, 12 Cal.3d at p. 720; see also, e.g., *Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310, 313.) But the statutory immunity applies to a public employee who commits covered acts "*even if* he acts maliciously and without probable cause." (§ 821.6, italics added.) Although this language is certainly broad enough to include traditional malicious prosecution claims alleging malice and a lack of probable cause, the inclusive phrase "even if" makes clear that the statute is not limited to traditional malicious prosecution claims; suits for damages arising from a *negligent* prosecution are covered too. (See *Johnson v. City of Pacifica*, *supra*, 4 Cal.App.3d at pp. 86–87 (lead opn. of Christian, J.) ["If the Legislature had inexplicably intended to deny immunity to an officer who merely acts negligently while protecting one who, more culpably, is guilty of malicious prosecution, it would have been superfluous to use the word 'even' "].)[3]

---

[3]    *Johnson v. City of Pacifica*, *supra*, 4 Cal.App.3d 82 is an example of a court upholding section 821.6 immunity in a case involving allegations of negligence rather than malice. For other examples, see *Jenkins v. County of Orange*, *supra*, 212 Cal.App.3d at page 283 (social worker's negligence allegedly leading to baseless child welfare proceeding); *Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 455–457 (police negligence in the course of a prosecution). We cite these

For this reason, although our prior decisions have loosely described section 821.6 as conferring immunity against malicious prosecution claims (e.g., *Sullivan, supra,* 12 Cal.3d at p. 721), section 821.6 is more aptly characterized as providing immunity against liability for claims of injury based on tortious or wrongful prosecution.  The immunity is narrow in the sense that it applies only if the conduct that allegedly caused the plaintiff's injuries was the institution or prosecution of an official proceeding.  But this immunity is broad in the sense that it applies to every such tort claim, whether formally labeled as a claim for malicious prosecution or not.  And where it applies, it is absolute, meaning that "the immunity is not conditioned on a showing that the defendant acted in a reasonable or procedurally proper manner, or any similar requirement." (*Quigley, supra,* 7 Cal.5th at p. 809; cf., e.g., Gov. Code, § 820.4 [qualified immunity for execution or enforcement of laws with "due care"]; *id.,* § 820.6 [qualified immunity for actions under apparent authority of unconstitutional, invalid, or inapplicable enactments, taken "in good faith, without malice"].)

The County does not dispute that section 821.6 covers only injuries caused by the institution or prosecution of official proceedings.  It argues, however, that injuries caused by police investigations qualify because of the close relationship between investigations and prosecutions.  The County leans heavily on the Court of Appeal's opinion in *Amylou R., supra,* 28 Cal.App.4th 1205, which held that section 821.6 applied to a

---

decisions only for the principle that claims of negligence can come within section 821.6, not for what they may say on other points, such as when a public employee other than the public prosecutor may be considered to have initiated or prosecuted an official proceeding.

crime victim's claims related to the mishandling of a police investigation because "investigation is part of the prosecution of a judicial proceeding." (*Amylou R.*, at p. 1211.) *Amylou R.* elsewhere reasoned that "[b]ecause investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.'" (*Id.* at p. 1210, quoting *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436–1437 and citing *Jenkins v. County of Orange, supra*, 212 Cal.App.3d at pp. 283–284, *Johnson v. City of Pacifica, supra*, 4 Cal.App.3d 82 and *Stearns v. County of Los Angeles* (1969) 275 Cal.App.2d 134, 136–137.)

In the wake of *Amylou R.*, numerous Courts of Appeal have extended section 821.6's immunity for "instituting or prosecuting" an official proceeding to cases in which the plaintiff's alleged injuries arose from investigative or law enforcement conduct other than the prosecution of an official proceeding. (See *Leon, supra*, 64 Cal.App.5th at p. 855; *Doe v. State of California* (2017) 8 Cal.App.5th 832, 844; *Strong v. State of California, supra*, 201 Cal.App.4th at p. 1461; *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 229; *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1062; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048; *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293; *Baughman v. State of California, supra*, 38 Cal.App.4th at p. 192.)

Following in the same vein, the County argues that because an investigation can be described as a precursor to a criminal prosecution, investigation qualifies as "prosecuting any judicial . . . proceeding" (§ 821.6) — even in a case like this one, where no charges are ever filed and no judicial proceeding is ever prosecuted. This argument is at odds with the plain

meaning of the statutory language, not to mention this court's explication of that very same language in *Sullivan* and the substantial body of common law distinguishing the investigation of crime from the wrongful prosecution of a legal action. It likewise ignores the simple reality that investigations need not, and often do not, lead to the institution or prosecution of any proceedings — a fact that ought to serve as a tipoff that the two things are not the same and cannot plausibly be treated as though they were.

To be sure, the facts surrounding the conduct of an investigation and the initiation or conduct of prosecution may sometimes overlap. But the potential for factual overlap between investigations and prosecutions does not justify treating them as one and the same, as the County asks us to do. If a law enforcement officer has initiated an official proceeding, the officer will enjoy immunity for that conduct under section 821.6, regardless of whether the officer's conduct may include certain acts described as investigatory. Where, however, the plaintiff's claim of injury does not stem from the initiation or prosecution of proceedings, section 821.6 immunity does not apply.

**B**.

To the extent the text leaves any room for debate, the legislative history confirms our reading of the statute. (*National Lawyers Guild v. City of Hayward* (2020) 9 Cal.5th 488, 498.) The history shows that section 821.6 was primarily designed to codify a preexisting common law immunity against malicious prosecution claims. The history contains no suggestion that the statute was also designed to create a new and much broader immunity for police officers engaged in investigation.

Before the Government Claims Act was enacted, police officers were generally immune from civil liability for malicious prosecution, but not for other negligent or wrongful acts committed in the course of their duties. (*Sullivan, supra,* 12 Cal.3d at p. 720; *Davis v. Kendrick* (1959) 52 Cal.2d 517, 518–519; A Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) pp. 415–416, 433.) As noted, after this court abolished the common law doctrine of governmental immunity in *Muskopf,* the Legislature charged the California Law Review Commission with recommending appropriate statutory provisions to govern governmental tort liability. Section 821.6 was one of several provisions proposed by the Commission. (See Recommendation, *supra,* 4 Cal. Law Revision Com. Rep. at p. 845 [proposed § 821.6]; Sen. Bill No. 42 (1963 Reg. Sess.) as introduced Jan. 10, 1963, § 1 [identical text].) The Legislature enacted the Commission's proposed section 821.6 without change. (See Stats. 1963, ch. 1681, § 1, p. 3270.)

In its report to the Legislature, the Commission commented on the understanding behind each proposed provision, including section 821.6. The Senate Committee on Judiciary made minor revisions to the Commission's comment on section 821.6 and issued the modified comment as reflective of its own intent in approving the statute: "The California courts have repeatedly held public entities and public employees immune from liability for [the conduct immunized by the proposed statute]. *Dawson v. Martin,* 150 Cal.App.2d 379, 309 P.2d 915 (1957) (public entities). *White v. Towers,* 37 Cal.2d 727, 235 P.2d 209 (1951); *Coverstone v. Davies,* 38 Cal.2d 315, 239 P.2d 876 (1952); *Hardy v. Vial,* 48 Cal.2d 577, 311 P.2d 494 (1957) (public employees). This section continues the existing immunity of public employees; and, because no statute imposes

liability on public entities for malicious prosecution, public entities likewise are immune from liability." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42 (1963 Reg. Sess.) 2 Sen. J. (1963 Reg. Sess.) p. 1890.)[4]

As we explained in *Sullivan*, the comment indicates that section 821.6 was designed to continue preexisting law immunizing public employees against liability for malicious prosecution. (*Sullivan, supra*, 12 Cal.3d at pp. 719–720.) The common law immunity cases cited in the comment "all involve the government employees' acts in filing charges or swearing out affidavits of criminal activity against the plaintiff" — that is, acts that would support a finding the defendant played a sufficient role in bringing about the prosecution, as a malicious prosecution claim requires. (*Id.* at p. 720; see *id.* at p. 720, fn. 9 [discussing common law cases].) The same cases demonstrate that claims predicated on conduct other than the prosecution of official proceedings fell outside the common law immunity and were dealt with on the merits. (See *Coverstone v. Davies, supra*, 38 Cal.2d at pp. 319–322 [rejecting malicious prosecution claim based on immunity but dealing with trespass, assault and battery, conspiracy, and false arrest and imprisonment claims on the merits]; *Dawson v. Martin, supra*, 150 Cal.App.2d at p. 381 [rejecting malicious prosecution claim based on immunity

---

[4] The Assembly Committee on Ways and Means thereafter reviewed both the Commission's comments and the Senate Committee on Judiciary's modifications to those comments. It offered its own revisions to some comments — none affecting any provision at issue here — and otherwise endorsed the Commission's and Senate Committee's views as reflective of its own "intent . . . in approving the various provisions of Senate Bill No. 42." (Assem. Com. on Ways & Means, Rep. on Sen. Bill No. 42 (1963 Reg. Sess.) 3 Assem. J. (1963 Reg. Sess.) p. 5439.)

but dealing with false arrest and imprisonment claims on the merits].)

Other available legislative history underscores the point that section 821.6 was principally directed to malicious prosecution claims and not other types of tort claims. In the Commission's proposal to the Legislature, section 821.6, which conferred prosecution immunity on public employees, would have been accompanied by a separate provision, proposed Government Code section 816, which would have imposed liability on public entities if an employee, "acting within the scope of his employment, instituted or prosecuted a judicial or administrative proceeding without probable cause and with actual malice." (Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at p. 841.) In explaining the proposal, the Commission described it entirely in terms of its effect on the liability of public employees and employers for malicious prosecution: "The immunity from liability for malicious prosecution that public employees now enjoy should be continued so that public officials will not be subject to harassment by 'crank' suits. However, where public employees have acted maliciously in using their official powers, the injured person should not be totally without remedy." (*Id.* at p. 817.) The Commission went on: "Under the previous law, public employees were not liable for malicious prosecution. *White v. Towers*[, *supra*, 37 Cal.2d 727]. This immunity is continued by Section 821.6. But under . . . Section 816, the public entity employing the particular employee may be held liable." (*Id.* at p. 841.) The Legislature did not, however, enact the Commission's proposed section 816 establishing malicious prosecution liability for public entities. The Senate Committee on Judiciary explained that the provision was deleted from the

bill to restore "pre-*Muskopf* law, and both public entities (Sections 815 and 815.2) and public employees (Section 821.6) are immune from liability for malicious prosecution." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42, *supra*, 2 Sen. J. (1963 Reg. Sess.) p. 1888.)

The available history, in short, indicates that section 821.6 was designed primarily to preserve the existing common law immunity for conduct that might otherwise support a malicious prosecution action. This immunity, we observed in *Sullivan*, did not extend to the act challenged there, consisting of "holding of a person in jail beyond his term," which had never before given rise to a malicious prosecution finding. (*Sullivan*, *supra*, 12 Cal.3d at p. 720.) Neither has the conduct challenged here — the investigation of a potential crime, unconnected to the filing of any charges — ever formed the basis of a malicious prosecution finding. Section 821.6 does expand the scope of immunity to include any claim of injury caused by wrongful prosecution, even if the prosecution is merely negligent and not malicious. But neither text nor legislative history lends support to the County's argument that section 821.6 covers claims of injury caused by acts that are merely investigatory and unconnected to the prosecution of any official proceeding.

## C.

The County argues that policy considerations favor a broader reading of section 821.6. We are unpersuaded.

The County's arguments invoke language from cases discussing the common law immunity of public employees from claims of malicious prosecution. In *White v. Towers*, *supra*, 37 Cal.2d 727, the defendant, a Fish and Game Commission investigator, swore out affidavits that caused state and federal

prosecutions of the plaintiff; after all charges were dismissed, the plaintiff sued for malicious prosecution. (*Id.* at pp. 728–729.) We held that common law immunity extends to peace officers sued for injuries arising from an alleged malicious prosecution, explaining: "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm." (*Id.* at pp. 729–730.) To avoid such a breakdown, "experience has shown that the common good is best served by permitting law enforcement officers to perform their assigned tasks without fear of being called to account in a civil action for alleged malicious prosecution." (*Id.* at p. 730.) Such immunity " 'is for the benefit of all to whom it applies, that they may be free to act in the exercise of honest judgment uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service.' " (*Id.* at p. 732.)

Similarly, in *Hardy v. Vial, supra,* 48 Cal.2d 577, we held that school officials were entitled to common law immunity in a malicious prosecution action brought by a professor who claimed the defendants had wrongfully instituted administrative proceedings to have him fired from his position. Describing the rationale for official immunity more generally, we quoted Judge Learned Hand: " '[I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to

subject those who try to do their duty to the constant dread of retaliation.' " (*Id.* at p. 583, quoting *Gregoire v. Biddle* (2d Cir. 1949) 177 F.2d 579, 581.)

The Courts of Appeal have relied on these passages in *White* and *Hardy* as justification for extending immunity under section 821.6 beyond wrongful prosecution to all manner of other torts. (*Leon, supra,* 64 Cal.App.5th at pp. 847, 855–856; *Doe v. State of California, supra,* 8 Cal.App.5th at p. 844; *Amylou R., supra,* 28 Cal.App.4th at p. 1213; *Citizens Capital Corp. v. Spohn, supra,* 133 Cal.App.3d at p. 889.) Emphasizing the potential chilling effect of suits like this one might have on legitimate law enforcement investigative activity, the County invites us to do likewise.

We decline the invitation. For one thing, the County overreads *White* and *Hardy*. *White* and *Hardy* afforded immunity only from claims based on wrongful institution of proceedings; neither case purported to recognize a sweeping immunity for any and all acts police officers may perform within the scope of their employment. And while each case did discuss the societal benefits of officer immunity, each also discussed the substantial considerations on the other side of the balance, including the hardship to individuals who may be left without an effective remedy for harm they have suffered. (*White v. Towers, supra,* 37 Cal.2d at p. 730; accord, *Hardy v. Vial, supra,* 48 Cal.2d at p. 583 [" 'There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative' "], quoting *Gregoire v. Biddle, supra,* 177 F.2d at p. 581.)

In any event, the legal landscape has changed considerably since our common law decisions in *White* and *Hardy*. Since then, the Legislature enacted a comprehensive statutory scheme that wipes the slate clean of common law liabilities and immunities and replaces them with statutory provisions specifying the extent of liability or immunity. (See Gov. Code, §§ 815, 815.2, 820.) In enacting section 821.6, the Legislature conferred absolute immunity against claims based on injuries caused by wrongful prosecutions, but not other types of injuries inflicted in the course of law enforcement investigations. The scope of the statute reflects the Legislature's considered judgment about how to balance the relevant policy considerations at stake, and we are bound to give effect to it.

It bears some emphasis, however, that section 821.6 is not the only provision of the Government Claims Act capable of addressing the concerns the County now raises. For instance, in enacting the Government Claims Act, the Legislature provided for public entity defense of claims and payment of judgments against public employees. (Gov. Code, §§ 825–825.6.) As we have previously recognized, these provisions alleviate the kinds of difficulties we outlined in *Hardy*: they mean that "[t]he public employee need not suffer concern over the possibility that he will be compelled to finance and oversee a tort suit filed against him personally" and "faces only a slim danger of ultimate personal liability; such liability attaches only in the rare instances of injuries arising from acts either outside the scope of employment or performed with actual fraud, corruption, or malice." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 791–792.)

In addition, various provisions of the Act confer immunity for official acts other than the institution or prosecution of official proceedings; the scope of immunity conferred by each provision is tailored to the relevant circumstances. The "most significant" of the Act's immunity provisions confers a general immunity for discretionary acts taken within the scope of authority. (Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at p. 812.) This immunity was long recognized at common law (*Caldwell v. Montoya, supra*, 10 Cal.4th at p. 979; see, e.g., *Downer v. Lent* (1856) 6 Cal. 94, 95) and preserved in Government Code section 820.2 (Recommendation, at p. 843; see *Caldwell*, at p. 980). But the Act also contains other, more targeted immunity provisions addressing what the Commission described as specific types of discretionary acts. (Gov. Code, §§ 820.4–821.8; see Recommendation, *supra*, 4 Cal. Law Revision Com. Rep. at pp. 843–845; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42, *supra*, 2 Sen. J. (1963 Reg. Sess.) pp. 1889–1890.) These provisions include Government Code section 820.4, which confers immunity for any "act or omission, exercising due care, in the execution or enforcement of any law," though not for "false arrest or false imprisonment." These provisions also include Government Code section 821, which expressly immunizes the "failure to enforce an enactment." (See Recommendation, at p. 844 [provision continues existing common law immunity for, inter alia, failure to arrest, citing *Rubinow v. County of San Bernardino* (1959) 169 Cal.App.2d 67].)

Depending on the circumstances, these and other immunity provisions may apply to certain investigatory actions of law enforcement officers even if section 821.6's absolute immunity does not apply. Ultimately, although the County may

prefer section 821.6's absolute immunity to the other possibilities, this preference does not justify an expansive reading of that immunity that accords with neither its text nor its history.

## D.

Little of what we say today is new; we reached essentially the same conclusions in *Sullivan, supra,* 12 Cal.3d 710. Relying on the text and legislative history, this court adopted a "narrow interpretation of section 821.6's immunity, confining its reach to malicious prosecution actions." (*Id.* at p. 721; see *id.* at pp. 719–722.) We restate that conclusion here with this clarification: Section 821.6 applies to claims of injury arising from a public employee's initiation or prosecution of an official proceeding, whether the act was allegedly done with malice and without probable cause, as required for a malicious prosecution action, or was allegedly tortious for other reasons.

According to the County, *Sullivan* decided only that false imprisonment is not immunized under section 821.6 and thus left open the question whether the statute might apply to other torts, such as negligent infliction of emotional distress, and other actions, such as investigations preliminary to any potential prosecution. The Court of Appeal below relied on a similar rationale to distinguish *Sullivan*, as have many of the Courts of Appeal that have applied section 821.6 to claims other than wrongful prosecution. (*Leon, supra,* 64 Cal.App.5th at p. 854; see *Gillan v. City of San Marino, supra,* 147 Cal.App.4th at pp. 1048–1049; *Jenkins v. County of Orange, supra,* 212 Cal.App.3d at p. 283; cf. *Amylou R., supra,* 28 Cal.App.4th at p. 1211 & fn. 2 [citing *Sullivan*, but without distinguishing it].)

But our analysis in *Sullivan* was not limited to the distinction between malicious prosecution and false imprisonment; we addressed the intended scope of section 821.6 more generally, concluding the statute was intended to continue the common law immunity for malicious prosecution alone. (See *Sullivan*, *supra*, 12 Cal.3d at pp. 719–721.) While the discussion in *Sullivan* did focus on the lack of immunity for false imprisonment, we ultimately enunciated what we described as a "narrow interpretation of section 821.6's immunity, confining its reach to malicious prosecution actions." (*Id.* at p. 721.) We explained that narrow interpretation was consistent with the statute's language and history. (*Id.* at pp. 719–720.) The facts of *Sullivan* may have involved wrongfully holding the plaintiff in confinement beyond his term. But the rationale for our decision was not limited to those facts. The County offers no adequate explanation for concluding otherwise.

In the alternative, the County argues that the Court of Appeal decisions extending section 821.6 immunity to investigatory conduct, including the court's decision in this very case, are consistent with *Sullivan*, properly understood, because they simply "apply, directly or indirectly, the same test applied in *Sullivan* with regard to malicious prosecution — 'whether the defendant was actively instrumental in causing the prosecution.'" But in this case and some others on which the County relies, there was either no prosecution at all or no causal connection between the prosecution and the plaintiff's claimed injuries. Dora is not suing the County and its officers for causing an unjust prosecution, but for the officers' lack of care in handling her late husband's body. Much the same is true of the plaintiffs in, for example, *Amylou R.*, *supra*, 28 Cal.App.4th 1205 (suit over disparaging remarks) and *Baughman v. State of*

*California, supra*, 38 Cal.App.4th 182 (suit over destroyed research).

Finally, the County argues that even if *Sullivan* establishes section 821.6 immunity extends only to tortious prosecution claims, "the doctrine of stare decisis should not be mechanically applied," and this court should reconsider *Sullivan* in light of the many Courts of Appeal that have interpreted the immunity more broadly. But as we have discussed, the textual and policy-based arguments on which those decisions rest do not hold up to scrutiny. And "[t]he principles underlying the doctrine of stare decisis apply with special force in the context of statutory interpretation, because the Legislature remains free to alter what we have done." (*Barner v. Leeds* (2000) 24 Cal.4th 676, 686, fn. 2.) We declined in *Barner* to disturb a decades-old construction of the scope of the immunity afforded by Government Code section 820.2; we do the same here with respect to immunity under section 821.6. We reaffirm the holding of *Sullivan, supra*, 12 Cal.3d 710, 719: Section 821.6 protects public employees from liability only for initiation or prosecution of an official proceeding.

To the extent they are inconsistent with this opinion, we disapprove *Doe v. State of California, supra*, 8 Cal.App.5th 832; *Strong v. State of California, supra*, 201 Cal.App.4th 1439; *County of Los Angeles v. Superior Court, supra*, 181 Cal.App.4th 218; *Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393; *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE), supra*, 157 Cal.App.4th 1056; *Gillan v. City of San Marino, supra*, 147 Cal.App.4th 1033; *Javor v. Taggart* (2002) 98 Cal.App.4th 795; *Ingram v. Flippo, supra*, 74 Cal.App.4th 1280; *Baughman v. State of California, supra*, 38 Cal.App.4th 182; *Amylou R. v. County of Riverside, supra*, 28

Cal.App.4th 1205; *Jenkins v. County of Orange, supra,* 212 Cal.App.3d 278; and *Citizens Capital Corp. v. Spohn, supra,* 133 Cal.App.3d 887.

## IV.

The Court of Appeal upheld the application of section 821.6 to confer absolute immunity on the County for negligent infliction of emotional distress arising out of the alleged mishandling of plaintiff's husband's body. This was error. Because the claim does not concern alleged harms from the institution or prosecution of judicial or administrative proceedings, section 821.6 does not apply.

Section 821.6 prosecution immunity was the only defense the trial court and Court of Appeal addressed, but it was not the only defense the County raised in its motion for summary judgment. Nothing we say addresses these other defenses, including whether Government Code sections 820.2, 820.4, or any other statutory immunity provision may apply.

## V.

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with this opinion.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Leon v. County of Riverside

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 64 Cal.App.5th 837
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S269672
**Date Filed:** June 22, 2023

---

**Court:**  Superior
**County:**  Riverside
**Judge:**  Daniel A. Ottolia

---

**Counsel:**

Law Office of Steven Zwick, Steven Zwick, James Alquist; Law Office of Richard L. Antognini and Richard L. Antognini for Plaintiff and Appellant.

Law Offices of Ali Taheripour, Ali Taheripour; Law Offices of Les T. Zador and Leslie T. Zador for Ali Taheripour and Leslie T. Zador as Amici Curiae on behalf of Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Arthur K. Cunningham, Jeffry A. Miller and Lann G. McIntyre for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard L. Antognini
Law Office of Richard L. Antognini
2485 Notre Dame Boulevard, Suite 370-45
Chico, CA 95928-7167
(916) 295-4896

Leslie T. Zador
Law Offices of Les T. Zador
15760 Ventura Boulevard, Suite 700
Encino, CA 91436
(818) 584-3560

Jeffry A. Miller
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street, Suite 1700
San Diego, CA 92101
(619) 233-1006